Good morning. Jeff Jones for the appellant, Kenny Thompson. I would like to reserve three minutes for rebuttal. The ultimate question in this appeal regarding the date that Mr. Thompson's California conviction became final is whether under the Supreme Court's decision in Jimenez v. Quarterman, the California Supreme Court took action to create a procedural situation in which Mr. Thompson's criminal conviction was again capable of modification through direct review after having been affirmed. The California Supreme Court in this case took two actions, two such actions, that rendered his conviction and sentence again capable of modification following the Court of Appeals' decision. First, the California Supreme Court denied Thompson's first petition for review without prejudice to any relief he might be entitled under the Supreme Court's case in Cunningham v. California, which was then pending. Second, and critically, following Thompson's second petition for review, in which he sought to challenge the Court of Appeals' refusal to recall the mandate, the California Supreme Court issued an order dismissing review in light of People v. Black. That last order, filed on September 12, 2007, dismissing review... Your contention is that a state court conviction became final on December 11th and Thompson filed his federal habeas petition on June 30th that puts him well within the one-year period. Yes, Your Honor. Counsel, what do we do with the Supreme Court case law that has suggested that only if the state court reopens the claim does it stop the running of the AEDPA clock? I believe that the case you're referring to, Jimenez v. Quarterman, is a narrow holding, but it's a broader holding than requiring an explicit reopening of the appeal. In this case, the contention is that the appeal was effectively reopened and that the relevant standard in that case, in Jimenez, is whether the conviction was again capable of modification. So that would encompass situations other than an explicit order that says the appeal is reopened and you can file another opening brief and that sort of thing. Well, the problem I'm having is that I read the language in Jimenez v. Quarterman to suggest that one of the concerns that the court had was that the one-year AEDPA statute not be subject to sort of indeterminate tolling when there's really nothing going on. And I'm having a hard time squaring the facts of this case with the Supreme Court's language in Quarterman. I think it can be squared because what Mr. Thompson is relying on here is nothing that he filed. I mean, his filings in this case are only relevant to the extent that they shed meaning on the orders of the California Supreme Court. That's all that matters. So this isn't a case where the ruling that the appellant seeks in this case is not something that opens any opportunity for anyone to file anything that affects the statute of limitations unless that filer is the California Supreme Court. This is all about their filings. One of the things, maybe you can help me with this, one of the things that concerns me is that the order that was issued on September 12, 2007, involved, what, 144 cases? 112, including Mr. Thompson's. It was not as if the California Supreme Court had taken an individual case, looked at it, and then ultimately decided there's no merit here and so we're going to dismiss it. It was, I guess, uncertain as to what the effect might be of pending cases in the Supreme Court of the United States on cases that were pending in its court. And so everybody was sort of waiting to see what the U.S. Supreme Court was doing. And that's why I'm saying I'm having a hard time squaring the facts of this case with quarter main because there was nothing active going on by way of reopening this case and examining the merit. I think in that regard, Your Honor, I don't think that the number of defendants listed in that order, the 112, weakens the contention because I think it's a fair inference from that September 2007 order that the California Supreme Court held those cases pending its decision in People v. Black. And then after having decided Black ruled on September 12, 2007, in this order, that all of those Cunningham claims in those 112 cases lacked merit under Black. It stands to reason from that that had the Supreme Court come out differently in Black, come out the opposite way, it would have modified the sentence in those 112 cases. Well, let me ask you the hard question then. If we rule in your favor and grant Mr. Thompson the relief that you're requesting, aren't we going to have to do the same thing with the other 111 cases on the same theory? You would. Yes, absolutely. Absolutely. They would all be – all of them would be final. Only on – not until September 12, 2007. All of those cases, that 112 cases, for the purposes of the statute of limitations, all of those cases became final on December 12, 2007. So any that percolate up under, you know, the proper timeline, yeah, absolutely. Have you checked that out? Are any of these other percolating? I wouldn't know, Your Honor. It would be difficult to determine only based on the state court case number whether the Ninth Circuit case number was similar. I have no idea. Well, when the California Supreme Court denied Thompson's petition for review, it did so without prejudice to any relief that he might be entitled to after the Supreme Court, U.S. Supreme Court, decided Cunningham. True. And so it was denied without prejudice. It seems to me what the California Supreme Court had in mind, that once Cunningham was decided, that Mr. Thompson could go ahead with his petition. And the time, what was the date that Cunningham became final? It was decided on January 22, 2007. All right. And that's when the decision was issued. Yeah, by the United States Supreme Court, yes. And then Thompson filed a motion in the California Court of Appeals to recall the remitter based on the Supreme Court's decision in Cunningham. True. And that motion was denied. And then Thompson petitioned the California Supreme Court for review and the California Supreme Court granted his petition for review. And then the Supreme Court dismissed Thompson's petition in light of black. And that was on September the 12th. And on December 11th or 12th, the period for petitioning for certiorari, that expired. And your position is that's the date that his state court conviction became final and he had one year from that date to file his federal habeas. Yes, sir. That's really the first chance he had. What else could he have done? Just ignore the ruling of the California Supreme Court of April the 12th? I believe up until September 12th, his attorney certainly was waiting a decision from the California Supreme Court. There was nothing preventing him, though, from filing a federal habeas petition in federal district court and then asking that court to stay and abate awaiting the decision in Cunningham, correct? No. No, that's true. He could have done that, though Mr. Thompson himself, the appellate attorney didn't file anything in federal court and didn't petition to the California Supreme Court. No, I understand that. Counsel, I appreciate the fact that this is a minefield for all of us and trying to apply the Supreme Court's help me with this language. Let me ask you first a hypothetical. Suppose that rather than filing in the California Supreme Court, he had filed in the California Court of Appeal and that court had entered the order that said, well, this Cunningham case is pending. We're going to deny relief here without prejudice to renewal, refiling at some point. And then a year or more passed and he files in the California Supreme Court. Wouldn't the Supreme Court cases that ask us to look at the reasonableness of the delay between the levels of review kick in at that point or would your position be the same? No, my position wouldn't be the same. I think that's a very different case. In that case, we would be talking about gap tolling. In this, we're talking about date of finality. I believe that's apples and oranges. Do you have Jimenez's decision with you? I do, Your Honor. I do have a copy. Do you have a footnote four of the opinion? I have an excerpt of it. I don't have footnote four. Oh, I was looking for that. I'm sorry. Oh, okay. Well, let me read the language to you. They drop a footnote and they say, we do not here decide whether petitioner could have sought timely federal habeas relief between October 11, 1997 when the one-year limitations period initially expired and September 25, 2002 when the state court ordered that his direct review be reopened. Were such a petition timely, though, it would not be through application of section 2244 D1A, which is what we're dealing with here, because we have previously held that the possibility that a state court may reopen direct review does not render convictions and sentences that are no longer subject to direct review non-final, citing to their decision in Beard v. Banks. That language seems to apply here. Yes. Well, I think, if I may, I think that after the first petition for review was denied without prejudice, you know, the Supreme Court denies it without prejudice, if that's all there was in this case, I think that by itself is nothing, and all that did, that order, that first order, created a possibility that it's without prejudice. There's a possibility that relief might be granted in the future, but something else is going to have to be filed, and that's the situation being addressed there. What's critical here is that second order of September 12, 2007, which is not denying a petition for review but dismissing a review, not dismissing a petition for review but dismissing a review. And the rule cited, the rule of court cited in that order, that September 12 order, is 8.528B. That rule states that upon receipt of, when the Supreme Court dismisses review as it did in that order, the decision of the Court of Appeal becomes final. I think that's, there's a lot of things at play here, but I think that's one of the critical things, that review was dismissed. It wasn't a second petition for review being denied, and the dismissal is clearly based on the merits of the Cunningham claim. That creates, I think, under the language of Jimenez, a procedural situation created by the California Supreme Court in which the conviction is capable of modification. It's in a procedural posture where the court can modify it. They chose not to because of the merits, and I think that's directly within Jimenez. In the earlier example, had the California Court of Appeal issued the same order that the Supreme Court later issued, your client could have taken an appeal on that order to the California Supreme Court. In that hypothetical, it was a order, in that hypothetical, the Court of Appeal would have denied the motion without prejudice. Right, without prejudice to refiling once the Supreme Court. Well, he could have appealed that order to the California Supreme Court. Yes, yes, and I think that then you do a situation where, in that situation, I think then in the California Supreme Court, if they deny the petition for review, then that's significant under the statute of limitations, 90 days later. Your client's, then, the final step to exhausting his remedies or moving along would have been the California Supreme Court, and that's what he did. Yes. That's what he did. Yes. And now a lot of these rules that we have here are all, many of them are set up to show great deference to the rulings of state appellate courts. So if we follow that policy, that helps your client, doesn't it? I think so. I think the, I think what, reviews de novo under a statute of limitations situation, but I agree absolutely that the state rules, as they're interpreted by the California Supreme Court, that's dispositive. And here we don't, here the state rules are certainly relevant, but what's really dispositive is the California Supreme Court issued an order that's very clear, and it's an order dismissing review, and it's clear under the rules what that means. But the comedy principle was addressed in Quartermain. I'm really having a hard time figuring out why Quartermain doesn't control here. And they talk about the point Judge Preggerson just made about EDPA's goal of promoting comedy, but they confine it to the language points to the conclusion of direct appellate proceedings in state court, which I think the state's arguing were concluded at this point. The state isn't arguing that. I think Jimenez v. Quartermain does control here. It does control. But I think that the part, I think that the question that case asks is, was the conviction placed in a procedural posture where it was again capable of modification? So it can become, the conviction can become final. At this point, after the first petition review, had nothing else been done, the conviction becomes final. But it can be... Isn't that a possibility as opposed to... I mean, it sounds to me more closer to a possibility than... I think, as I interpret him, as I read Jimenez, capable of modification, it isn't a question. When there's a possibility of review, we're saying, well, it's possible. I mean, it's a question of probability. I think capable of modification isn't a question of the odds. It's a question of the procedure. How do we define the procedural posture here? Maybe there's no chance of... You might look at the merits and say, well, there was no chance of relief here. But the key is, was it in a procedural posture where the court had the capacity to modify it? If the court placed it in a procedural place where it had the capacity to modify that case, that resets the statute of limitations. But we would have to... Counsel, if I could ask one question. Isn't it absolutely clear that when the Supreme Court, in September, issues a ruling citing Black, that they had granted review and that by citing Black, they're making a ruling on the merits? Yes, Your Honor. Okay. That seems to me to go a long way to support your client's position that this wasn't final until that occurred. If they had decided Black the opposite way, presumably your client would have gotten relief there, right? Yes, Your Honor. I think that is a clear inference from the order of September 12, 2007. Okay, thank you. All right. The bill was 7 minutes and 14 seconds. I'm very far. I went a long time. I apologize. No, that's all right. It was good argument. Good morning. May it please the Court. Deputy Attorney General Rama Maleen, on behalf of Respondent the Warden. I would like to start out first with Petitioner's remedy in the State Trial Court. Petitioner, I think, as this Court alluded to... You would know if any of these other cases are percolating up, wouldn't you? If we attribute the knowledge of the Attorney General to you, are there any percolating? In that case, Your Honor, the way to check, and I did not check, is you can look at the California Supreme Court website and see the state of these cases where they are at a particular point. There was 111 other cases. I only familiarized myself with the facts of this case. I don't know what the disposition as to those cases are. However, I did look... Is anyone else in your office working on this issue? Are you the first one to tackle it? I believe I'm the first one to tackle it in this Court. But the California Court of Appeal, if I may continue, gave Petitioner the option, when it denied his motion to recall the remediator, to file a habeas petition in the Superior Court. As the District Court noted, if that petition had been a habeas petition as opposed to a motion to recall the remediator, there was still time at that point for Petitioner to file a timely petition. However, Petitioner chose another procedural route, which ultimately was unsuccessful. And I believe that the Court needs to look no further than its own decision in Randall v. Crawford, where the Court adopted... You're saying that when Cunningham was decided that what the Petitioner should have done was to file a habeas petition in the Superior Court? What I'm saying is that the possibility was alerted to Petitioner by the California Supreme Court to file a habeas petition in the Superior Court. What did the Supreme Court say? You can file in the Superior Court? The Court of Appeal specifically told... I'm talking about the Supreme Court. Well, this was after the denial of the motion to recall the remediator in the Court of Appeal. From that order, denying that motion to recall the remediator, where it was first raised in the Court of Appeal, that Court told Petitioner that he could file a habeas petition in the Superior Court. Then he appealed that ruling by filing a petition for review in the California Supreme Court, which then ultimately dismissed review in light of People v. Black. Should he have filed simultaneous petitions, one with the Superior Court, one with the Supreme Court? You can do that. You can file the habeas directly with the California Supreme Court. You don't have to go through Superior Court. And they call it something else, quorum nobis. You don't have to go... Each one is like a de novo filing. And that being the case, Petitioner was certainly alerted to that possibility. However, Petitioner chose another route, and that was the route of filing a motion to recall the remediator, which, as I argued, that is nothing more than asking the Court to reopen review. Review had been closed as of July 11, 2006, after the denial of the first petition for review. Counsel, if I could ask you a question. Accepting what you just said, isn't it the fact that the California Supreme Court did grant review on that motion, and then they issued a ruling on the merits citing Black? So why doesn't that mean that the conviction wasn't final until three months after the September ruling? I would respectfully argue that dismissing review in light of Black was not a decision on the merits. And second of all, the case had already been closed by conclusion of direct review after the denial of the first petition for review. All those 111 cases, what happened in this case is that Petitioner sought to reopen direct review with a motion to recall the remediator. How those other 111 cases reached the California Supreme Court, I'm not aware of. But in this case, he sought to reopen a process that had already been closed. Being the case, the California Supreme Court's dismissal in light of Black did not reopen what had already been closed. And the United States Supreme Court expressly has clearly stated in BRB Banks that a procedure which seeks to reopen direct review does not make that process non-final unless the court affirmatively does something, as was the case in Jimenez v. Quarterman. Counsel, before they issued their order citing Black, did they take some action that is characterized as a granting of review? The California Supreme Court did not in this case. So if I understand what you just said, then you would agree that the language that I read to Mr. Jones from the Quartermain decision controls here. Is that what you're saying? Because they're citing to Beard v. Banks in that footnote 4 that I read. And I argued that same footnote in my brief, and I would agree that it does control. So you think it's a good idea? Most of these habeas petitions are filed by prisoners in pro per. And so you think it's a good idea to have all these complex rules and foresight and all the rest of it when they have poor law libraries and not too many people to help them. And filling out these writs as applications is great therapy and gives them a chance, something to look forward to. Is that the way the great writ ought to be treated? Or are we saying the great writ is the great joke? I mean, really. I would argue respectfully, Your Honor, the great writ also has rules attached to it. And whether it be a prisoner or counsel, the Supreme Court has stated that those rules need to be followed. AEDPA is an example of one of those rules. And it provides a one-year statute of limitations. And I think very aptly in this case, as noted by the committee. Has AEDPA caused a number of habeas petitions filed to diminish, decrease? If I'm understanding the Court's question. You're talking to someone that was involved in this before we ever heard of AEDPA. And the district judges were handling these just fine. And now we have this structure. We have probably more magistrates than we have district judges. We have probably, who knows how many, hundreds of law clerks working on this. And I'm not so sure what we all accomplished. But we're following Charles Dickens' great observation. Whatever the book is. Bleak House. Bleak House, yeah. That the one overriding rule of the English law is to always keep itself in business. And so we've accomplished that. I have a follow-up question what the benefit is. If Judge Gregersen's concluded that. I love Bleak House, so I'm glad to hear that. But let me also ask this. Because I had asked counsel if the state court, Supreme Court, had granted review. And you've advised no. And neither your brief nor the brief of Thompson say they had. But we see in the docket of the California state courts an entry on May 23, 2007. And it literally states review granted. And then it says briefing ordered. So it says review granted, briefing ordered. Why isn't that showing that the review was not concluded? In this case, Your Honor? Right. I've never seen that order ostensibly granting review in this case on May 23. Well, I'm looking at the page right now. Maybe we should have you look at it and let you take a file of supplemental brief or comment. But it says at the top, California Appellate Courts. And then under that, Supreme Court. And then under that docket, Register of Actions. Then it's got a chart. It says People v. Thompson. And it's got a list of different actions. And one is the May 23 entry I mentioned that says review granted. I mean, it seems it's on the California website. I'm having the clerk hand him my bench book that has a copy of that. Mr. Jones, if you'd like to look at it, feel free to step up. Thank you, Judge Tolman. I appreciate that. It's hard to hand a piece of paper from here. That's why you have us here, Judge Gould. We got you covered. Yes, I see that order now. When you come in here, you've got to be ready for everything. I think I'm ready to give an answer to this. In this case, Your Honor, review, the description on this docket sheet says review granted, briefing deferred. So further action in this matter was deferred pending a further ruling by the California Supreme Court. But that review or that procedure on May 23, 2007, that was dismissed. So it says review granted, briefing deferred. That aspect of the case I don't believe has been addressed by either party. But, and I would gladly provide supplemental briefing to this court, but I don't believe that review granted means that the court has decided to consider the case. When you look at it in context with the briefing deferred, it's just taking the case up in consideration pending the decision in Cunningham or pending the effect of Cunningham because Cunningham was decided on January 22, 2007. So the court was in its process of determining whether a petitioner would be entitled to any relief. And that takes us back to the original or the second petition for review. You're speculating as to what the meaning is. Well, without having briefed this issue, Your Honor, I'm giving the answer, the best answer that I can give based on the limited facts. Let me suggest, I'm only one judge on this panel, but if Judge Pagerson and Judge Tallman would agree, I would suggest we issue an order that permits both you and Mr. Thompson's lawyer to comment on the significance, if any, of the California docket shown on its website. So ordered. I agree. And I will gladly submit the briefing, but I would just add, if I could just continue for one more moment, that the court does explain in the notes side of that description that further action in this matter is deferred pending further order of the court. And it cites California Rules of Court Rule 8.512D2, which gives the court that authority to defer action. So the court used the term review granted, but I don't believe that review was granted in the case based on the notes section of that description. And why don't you put that in your letter brief after you've had a chance to think about it. I mean, we often have cases pending before us on the merits where we issue a stay or we sit on it temporarily. And it doesn't mean that our decision is final. It just means that we're deferring action. So I'm not sure your argument on that makes sense, but there might be some California law or a federal law that would bear on it. So we'll give you plenty of chance on that. In light of that, I would just conclude, obviously further briefing is going to be provided in this case, but I would just conclude that looking at the facts of this case, even in light of this new development, that the process of review was never reopened and that petitioner's conviction became final after the denial of the first petition for review. And I think it's important to point out that, as noted by other courts, specifically Randall v. Crawford, which is a decision from this court, and other circuits, Bethea v. Gurditch, and also as noted by the U.S. Supreme Court in Beard v. Banks, that allowing a petitioner to come into court, years later even, and file some type of pleading to extend the statute of limitations would essentially eviscerate that one-year statute of limitations. But, you know, you have this language here. Petition for review, I'm not quoting, is denied without prejudice. Why did they put that in there? Because it left open, I think as I've argued previously, it left open the possibility that petitioner... Without prejudice. Yeah. That was the denial from the first petition for review. Whenever I got denied, it was always with prejudice. That was from the first petition for review. And that showed that there was a possibility that petitioner might be entitled to relief under Cunningham. However, that didn't mean that his conviction became non-final. I think it's important to distinguish between the possibility of gaining relief in the future. Do you think the Supreme Court misled this petitioner? No, I don't think the California Supreme Court misled him. I think the California Supreme Court alerted him to the possibility of this other case out there, Cunningham, and the potential impact that the United States Supreme Court's decision might have on him. But it did not mislead him. It instructed him, I think, adequately, even for a pro se petitioner, that he may be entitled to review. And again, if I could just reiterate, I think that's important to distinguish that between reopening a case that has been closed on direct appeal. And this case was closed after the denial of the first petition for review. It was never reopened. Hence, I argue that it's untimely. Unless there's any... I see I've exceeded my time, unless there's any further questions. Thank you. Okay, thank you very much. What is that button you have on your... Oh, right here? Yeah. That is a replica of our credential, our court credential. Your court credential? No, court. We have a credential that we show when we come into court. Oh, oh. It's just a miniaturized version. I thought maybe you were an FBI agent. No. No. Thank you. It's nice. Just go up there. In rebuttal, I would like to, with the utmost respect, point out that my opponent... My colleague, in response to Judge Gould's question, he said that the September 27th order, the September 12th, 2007 order by the California Supreme Court, was not a decision on the merits. In the Respondent's brief at pages 15 to 16, it says the opposite. It argues that it was a decision on the merits. That order being a decision on the merits, I think that's indisputable. It cites California Rule of Court 8.528B. In closing, I would just urge the court to read that rule very carefully. I think it's extremely important. You're going to get a chance to respond. I'm sorry? You're going to get a chance to respond to the letter brief. Yes, I'm not addressing the new development. I realize I'll address the docket sheet in my supplemental brief. I won't address that here. So where is that in the brief? He said pages 15 to 16. Pages what? Just supporting the point that this September of 2007 order was a ruling on the merits of the Cunningham claim, citing people v. Black, and citing this Rule 8.528B. All of that points to the same thing. Rule 8.528B explicitly says a case is final in California after review is denied. It then becomes final. And this order clearly states review is denied, plus we have this new development that makes explicit what I was arguing was implicit, that review was granted and merits were considered and review was denied, and that resets the statute of limitations. And with that, I'll conclude. All right. Thank you. The matter will stand submitted.
judges: Pregerson, Gould, Tallman